1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                                   EASTERN DISTRICT OF CALIFORNIA

10

11    HECTOR CLARENCE ANDERSON,                    Case No. 1:19-cv-255-JLT (PC)

12                       Plaintiff,                **ORDER GRANTING DEFENDANT'S**
                                                   **MOTION FOR SUMMARY JUDGMENT**
13           v.

14    H. ANGLEA,                                   (Doc. 98)

15                       Defendant.                Clerk of Court to close the case.

16

17           Hector Clarence Anderson has filed this civil rights action under 42 U.S.C. § 1983 for

18    injuries sustained during a prison riot. (Doc. 1.) This matter proceeds on Plaintiff's Eighth

19    Amendment failure to protect claim against Warden Anglea as alleged in the complaint. (*See*

20    Doc. 24 at 6, 7; Doc. 26.) Defendant has filed a motion for summary judgment, arguing that he

21    was not deliberately indifferent to Plaintiff's safety, or in the alternative, Defendant is entitled to

22    qualified immunity. (Doc. 98.) Plaintiff filed a response in opposition to summary judgment

23    based on the existence of genuine issues of material fact. (Doc. 101.)[1] Defendants filed a reply.

24    (Docs. 102.) The parties in this action have previously consented to Magistrate Judge jurisdiction

25    for all purposes. *See* 28 U.S.C. § 636(c). For the reasons set forth below, the Court **GRANTS**

26    ─────────────────────

27    [1] Plaintiff filed a motion to submit staff incident reports as exhibits in support of his opposition to summary
      judgment. (Doc. 103.) Based on his representation that these documents were previously unavailable, (*see* Doc. 101
      at 10, ₧ 6), and their relevance to summary judgment issues, the Court **GRANTS** Plaintiff's motion. (Doc. 103.) *See*

28    *also* Fed. R. Civ. P. 56(d) ("If a nonmovant shows . . . it cannot present facts essential to justify its opposition, the
      court may . . . allow time to obtain affidavits or declarations or . . . issue any other appropriate order.

1    Defendant's motion for summary judgment. (Doc. 98.)

2    **I.    UNDISPUTED FACTS**

3          At all relevant times, Plaintiff was an inmate housed at the Sierra Conservation Center

4    (SCC). Defendant was the Chief Deputy Warden at SCC from between April 2017 to December

5    2017 and the Warden at SCC from December 2017 through December 2019. As the warden,

6    Defendant had overall responsibility for the operation of the institution, he was not involved in

7    making daily staff assignments at SCC.[2]

8          On May 17, 2018, an inmate riot started in the SCC Facility B dining hall during

9    breakfast. Plaintiff was inside the dining hall before the riot started, and he did not observe any

10   indications that a riot was about to occur. Plaintiff had no prior knowledge that a riot was going to

11   occur, and he is unaware of any prior fights that started in the dining hall. Plaintiff acknowledges

12   that the riot was a spontaneous event. He believes the riot started when a Hispanic inmate under

13   the influence of drugs punched a Black inmate in a dispute over a drug deal.

14         Correctional Officer Lupian-Hernandez observed the fighting begin and announced the

15   incident through institutional radio, requesting a Code 1 response. CO R. Petree attempted to

16   contain the riot by trying to secure the door and deploying a dispersion grenade, but he was

17   unsuccessful. Riot Sergeant, J. Fell, requested Code 2 and Code 3 responders come to the area

18   and an assembly area was designated with a skirmish line formed by responding staff. Tower

19   Officer McKnight heard the initial radio call and sounded the facility alarm. Ten to twelve

20   officers in protective gear responded to the alarm, deployed chemical agents, used pneumatic

21   weapons and less-lethal 40 mm weapons, and formed a skirmish line in two minutes.

22         When Plaintiff finished eating, he went from the dining hall to the basketball court on the

23   Facility B exercise yard. He was at the bleachers on the basketball court when he heard the alarm

24   sounded by McKnight. Plaintiff complied by getting down on the ground, consistent with SCC

25   riot procedures. Approximately one minute after the inmates came from the dining hall, a group

26   of inmates assaulted Plaintiff by punching and kicking him. Plaintiff returned to the bleachers and

27

28   [2] Plaintiff disputes this fact and asserts that Defendant was involved in making staff assignments. However,
     Plaintiff's citation to Anglea's declaration does not support this proposition. (*See* Doc. 98-3 at 12; Doc. 101 at 13.)

1    was punched in the face by another inmate. Plaintiff sustained physical injuries from the attack.

2           To Defendant's knowledge, on May 17, 2018, there were no unstaffed custody positions

3    at Facility B. Defendant was unaware of prior inmate fights that had started in the Facility B

4    dining hall. Defendant had no prior information that the May 17, 2018, riot would occur.[3]

5           A previous riot occurred at SCC on August 17, 2017 on the Facility B yard. Plaintiff was

6    present at that riot, which started near the phones concerning sign-ups for the use of phones

7    between Black and Hispanic inmates. Following the incident, Investigative Services Unit at SCC

8    investigated by conducting inmate interviews, reviewing video, and conducting threat

9    assessments. Officials conducted meetings with the Men's Advisory Committee to discuss the

10   incident and how to avoid future incidents. Officials searched for weapons and contraband in the

11   dorms and on the yard. Approximately 320 inmates involved in the riot were issued Rules

12   Violation Reports and referrals were made to the Tuolumne County District Attorney's Office for

13   possible prosecution. Consideration was given to transfer inmates likely to be involved in future

14   incidents. Inmate movement on Facility B was restricted through August 23, 2017. Authorization

15   was obtained to hire additional correctional staff. Ten additional video cameras were installed in

16   the yard. As the Chief Deputy Warden at SCC at the time, Defendant recommended to the warden

17   to stagger the release of inmates onto the Facility B yard to prevent future incidents.

18          Another incident occurred in June 2017 in front of Dorm 68. Three or four inmates were

19   fighting. Correctional staff responded by sounding an alarm and deploying blast grenades. The

20   fight stopped after about a minute. The incident did not escalate into a riot, as they did on May

21   17, 2018.

22   **I.      LEGAL STANDARD**

23          **A. Summary Judgment**

24          Summary judgment is appropriate when the moving party "shows that there is no genuine

25   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

26   Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue

27

28   [3] Plaintiff disputes Defendant's assertion and states: "Anglea had the sufficient signal intelligence or clues, based on the/his endless and deep prison's politics." (Doc. 101 at 21–22.) This assertion is vague, conclusory, and unsupported by the record.

1    of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may

2    accomplish this by presenting evidence that negates an essential element of the non-moving

3    party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot

4    produce evidence to support an essential element of his claim that must be proven at trial. *Id.*;

5    Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the

6    non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at

7    322–23.

8         If the moving party meets this initial showing, the burden shifts to the non-moving party

9    to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*,

10   477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and

11   conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990);

12   *see also Celotex*, 477 U.S. at 324. Instead, the opposing party is required to tender evidence of

13   specific facts in the form of affidavits or admissible discovery material. *See* Fed. R. Civ. P.

14   56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986). In

15   attempting to show a factual dispute, the opposing party need not prove a material fact

16   conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a

17   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809

18   F.2d at 631. "Where the record taken as a whole could not lead a rational trier of fact to find for

19   the non-moving party, there is no genuine issue for trial." *Id.* at 587. However, when deciding a

20   motion for summary judgment, the court must view any inferences drawn from the underlying

21   facts in a light most favorable to the non-moving party. *Id.*

22        The Ninth Circuit has "held consistently that courts should construe liberally motion

23   papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules

24   strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

25   F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still

26   must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at

27   872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

28   if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203

1    F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

2    **II.     DISCUSSION**

3           Defendant has filed a motion for summary judgment arguing that he was not deliberately

4    indifferent to Plaintiff's safety. In the alternative, Defendant argues that he is entitled to qualified

5    immunity. Plaintiff filed a response in opposition arguing that genuine issues of fact preclude

6    summary judgment. Defendant filed a reply that Plaintiff's conclusory arguments are factually

7    unsupported and fail to raise a genuine issue of material fact concerning deliberate indifference.

8           Plaintiff has also filed a "response to Defendant's reply," along with declarations and

9    exhibits in support. (Docs. 104–09.) Plaintiff has not sought leave to file the surreply. The court

10   has reviewed the submissions and finds that they are unnecessary for the Court's determination

11   of summary judgment issues. Therefore, in ruling on the motion for summary judgment, the

12   Court has not considered these exhibits.

13          **A.  Eighth Amendment**

14          The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S.

15   Const. amend VIII. The Eighth Amendment protects prisoners from inhumane methods of

16   punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825

17   (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "After incarceration, only

18   the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment

19   forbidden by the Eighth Amendment." *Ingraham v. Write*, 430 U.S. 651, 670 (1977) (quoting

20   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

21          No matter where prisoners are housed, prison officials have a duty to ensure that

22   prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

23   personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and

24   citations omitted). Under the Eighth Amendment, prison officials have a duty to take reasonable

25   steps to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833.

26   However, "not . . . every injury suffered by one prisoner at the hands of another . . . translate

27   into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. A

28   prison official is liable for an assault by one inmate on another only when the assaulted inmate

1    can show that the official was deliberately indifferent to a substantial risk of serious harm to his

2    safety. *Id.*

3        The deliberate indifference standard involves both an objective and a subjective prong.

4    *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). First, the alleged

5    deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citing

6    *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A deprivation is sufficiently serious if a prison

7    official's act or omission results in the denial of "the minimal civilized measure of life's

8    necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). For a claim based on a failure to

9    prevent harm, the inmate must show that the conditions of confinement pose a "substantial risk

10   of serious harm." *Id.* at 824 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

11       The second prong of this test is subjective and requires the prison official to have a

12   "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 302–

13   04). In cases challenging conditions of confinement, the plaintiff must show that the prison

14   official acted with "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834

15   (citing *Wilson*, 501 U.S. at 302–03). "Deliberate indifference" entails something more than

16   negligence but less than acts or omissions intended to cause harm or with knowledge that harm

17   will result. *Farmer*, 511 U.S. at 835 (following *Estelle v. Gamble*, 429 U.S. 979, 104 (1976).

18
19           [A] prison official cannot be found liable under the Eighth Amendment for
             denying an inmate humane conditions of confinement unless the official knows
             of and disregards an excessive risk to inmate health or safety; the official must
20           both be aware of facts from which the inference could be drawn that a
             substantial risk of serious harm exists, and he must also draw the inference.

21   *Farmer*, 511 U.S. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial

22   evidence, and the very obviousness of the risk may be sufficient to establish knowledge. *See id.* at

23   842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

24       Even if a prison official should have been aware of the risk but was not, there is no

25   Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard*, 744 F.3d 1076,

26   1086 (9th Cir. 2014) (internal quotation and citation omitted), *cert. denied*, 574 U.S. 1073

27   (2015). "[A]n official's failure to alleviate a significant risk that he should have perceived but did

28

                                              6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. In addition, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably." *Id.* at 844.

In this instance, Defendant does not appear to dispute that the alleged deprivation is objectively, sufficiently serious, especially given Plaintiff's injuries from the attack. Instead, Defendant argues that the undisputed facts demonstrate that Defendant was not subjectively, deliberately indifferent to the need to protect Plaintiff from an attack by other inmates. In response, Plaintiff argues that there was a substantial risk to his safety and the safety of everyone at SCC Facility B and that Defendant knew of the risk. Plaintiff states that "[t]he defendant tried to prevent or stop the violence, but defendant did not try as hard as he should've." (Doc. 101 at 5.) From this, Plaintiff argues that Defendant's attempts to prevent constitutional injuries were not reasonable, which he contends is a jury question. (*Id.*)

The undisputed evidence shows that on May 17, 2018, Plaintiff was in the dining hall when fight broke out, and he did not observe indications that a riot was about to occur. Neither the Plaintiff nor the Defendant was aware of any prior fight that began in that location, and they had no prior knowledge that this riot would occur. The Facility B custody positions were filled on the day of the incident, and correctional staff responded to and quelled the riot. Under these circumstances, Plaintiff has failed to show that Defendant was aware of facts from which a substantial risk of serious harm can be inferred or that he drew the inference. *See Farmer*, 511 U.S. at 837. Though Plaintiff argues that the official's knowledge of the risk is a question of fact for the jury to decide, he has not presented any conflicting evidence that would raise an issue of fact. Plaintiff has even acknowledged that the riot was a spontaneous event. (Doc. 101 at 14.) Because the Defendant was not aware of a risk to Plaintiff's safety, Plaintiff has failed to satisfy the subjective component of "deliberate indifference," and summary judgment is appropriate on these grounds.

Even if a plaintiff presents evidence that the defendant officer knew of a substantial risk

1    to an inmate's safety, the defendant may be free from liability if he responded reasonably to the

2    risk. Here, Defendant was not present when the riot occurred, and officers quelled the riot in his

3    absence. Therefore, he did not have an opportunity to respond immediately to the May 17, 2018,

4    riot.

5            In the complaint, Plaintiff references the riot that occurred on August 17, 2017, to

6    demonstrate a "pattern of uncontrollable rioting and mass casualty violence at SCC." (Doc. 1 at

7    11.) Defendant argues that his response to the August 17, 2017, riot demonstrates that he did not

8    ignore inmate safety and was not deliberately indifferent to Plaintiff's safety. He contends that

9    the following steps were taken to deter future incidents from occurring: ISU conducted an

10   investigation; threat assessments were made; staff met with the Men's Advisory Committee

11   inmates; officers conducted searches for weapons and contraband; and inmates involved were

12   disciplined and referred to the district attorney for possible prosecution; staff considered

13   transferring inmates likely to be involved in future incidents; SCC obtained authorization to hire

14   additional correctional staff; additional video cameras were installed. Additionally, as the chief

15   deputy warden, he recommended the reduction of inmates on the Facility B yard by staggering

16   the release of inmates to the yard. (*See* Doc. 98-1 at 13.)

17           Plaintiff disputes that these efforts were sufficient to deter future incidents, particularly

18   given the occurrence of future incidents. "When the 'ever-present potential for violent

19   confrontation and conflagration' . . . ripens into actual unrest and conflict . . . 'a prison's internal

20   security is peculiarly a matter normally left to the discretion of prison administrators.'" *Whitley*

21   *v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Jones v. N.C. Prisoners' Labor Union*, Inc., 433

22   U.S. 119, 132 (1977); *Rhodes*, 452 U.S., at 349, n. 14. "Prison administrators . . . should be

23   accorded wide-ranging deference in the adoption and execution of policies and practices that in

24   their judgment are needed to preserve internal order and discipline and to maintain institutional

25   security." *Whitley*, 475 U.S. at 321 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). The

26   deference extends to measures taken in response to an actual confrontation with rioting inmates

27   or preventative measures intended to reduce the occurrence of violent incidents. *Whitley*, 475

28

8

1    U.S. at 321.

2

3      Plaintiff characterizes Defendant's post-riot measures as "weak and unreasonable." (Doc.

101 at 19–20.) Plaintiff does not appear to dispute that these actions were taken, but he argues

4

5 that the reasonableness of the actions is a jury question. Other than his conclusory argument that

the post-riot measures were unreasonable, Plaintiff presents no evidence that Defendant had a

6

7 "'sufficiently state of mind' to be guilty of deliberate indifference toward Plaintiff's safety."

*Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (quoting *Farmer*, 511 U.S. at 837).

8

9      Viewing any inferences drawn from the underlying facts in a light most favorable to the

non-moving party, Defendants have demonstrated that Plaintiff is unable to prove deliberate

10

11 indifference toward Plaintiff's safety, an essential element of his Eighth Amendment Claim.

Accordingly, Defendant's motion for summary judgment must be granted.

12

     **B. Qualified Immunity**

13

14      In the alternative, Defendant asserts that he is entitled to qualified immunity. Qualified

immunity protects government officials from liability for civil damages unless their conduct

15

16 violates "clearly established statutory or constitutional rights of which a reasonable person would

have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam); *Harlow v.*

17

18 *Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields an officer from suit when she

makes a decision that, even if constitutionally deficient, reasonably misapprehends the law

19

20 governing the circumstances she confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (quoting

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Although both the "clearly

21

22 established right" and "reasonableness" inquiries are questions of law, where there are factual

disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment

23

24 on qualified immunity grounds. *See Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir.

2011).

25

26      The doctrine of qualified immunity attempts to balance two important and sometimes

competing interests: "the need to hold public officials accountable when they exercise power

27

28 irresponsibly and the need to shield officials from harassment, distraction, and liability when

9

they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This doctrine recognizes that holding officials liable for reasonable mistakes might unnecessarily impede their ability to make difficult decisions in challenging situations and disrupt the effective performance of their public duties. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation omitted). Qualified immunity is intended to allow officials to act "swiftly and firmly" where the rules governing their actions are unclear. *See id.* However, an official is not protected where a reasonable official would understand that what he was doing violated a clearly established right. *Jeffers*, 267 F.3d at 910 (quoting *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)).

To determine whether a government official is entitled to qualified immunity, courts must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson*, 555 U.S. at 232. Although *Saucier* originally required courts to proceed in that exact sequence, the Supreme Court later determined that courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. If the court decides that Plaintiff's allegations do not support a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine "the more difficult question whether the relevant facts make out a constitutional question at all." *Pearson,* 555 U.S. at 239.

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City & County of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 135 (2015) (alteration and omission in original; citation omitted). This is an "exacting standard" that "gives government officials breathing room to make reasonable but mistaken

1   judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the

2   law." *Id.*

3          Ordinarily, courts look to prior case law to determine whether the "contours" of the right

4   have been sufficiently defined with specificity. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th

5   Cir. 2000). Where the pre-existing law provides the defendant with "fair warning" that his

6   conduct was unconstitutional. However, the prior case law does not need to present the exact or

7   closely analogous factual situation to show that the law is clearly established. *Id.* at 1197–98

8   (citing *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990); *United States v. Lanier*, 520

9   U.S. 259, 270–71 (1997)). The court must look to all available case law, including the decisions

10  of other circuits and district courts, and evaluate whether the Supreme Court would have reached

11  the same result. *Osolinski*, 92 F.3d at 936 (citing *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir.

12  1989)). Generally, the court will not look to post-incident cases to determine whether the law

13  was clearly established at the time of the incident. *Osolinski*, 92 F.3d at 936 (citing *Baker v.*

14  *Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)).

15         Under the circumstances of this case, the Court found it appropriate to address the first

16  *Saucier* prong, whether Defendant violated a constitutional right. Viewing the evidence in a light

17  most favorable to Plaintiff as the non-moving party and liberally construing Plaintiff's *pro se*

18  pleadings, this Court determined that the factual allegations do not support an Eighth

19  Amendment claim that Defendant was deliberately indifferent to Plaintiff's safety. In other

20  words, Defendant's conduct did not violate a constitutional right. Upon this finding, the Court

21  does not reach the second *Saucier* prong concerning qualified immunity, whether the right was

22  clearly established at the time of the alleged misconduct.

23  ///

24  //

25  ///

26  ///

27  ///

28

11

**IV.    CONCLUSION**

      The material facts concerning Defendant's conduct and state of mind are not in dispute, and Defendant has met his burden to demonstrate that he is entitled to judgment as a matter of law. For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. (Doc. 98.) The Clerk of Court is DIRECTED to close the case.

IT IS SO ORDERED.

    Dated:    **December 26, 2021**                      **/s/ Jennifer L. Thurston**
                                                           CHIEF UNITED STATES MAGISTRATE JUDGE